**E. I. DuPONT de NEMOURS AND COMPANY et al., Plaintiffs,**

v.

**Russell E. TRAIN et al., Defendants.**

Civ. A. No. 74–57.

United States District Court, W. D. Virginia, Roanoke Division.

Sept. 27, 1974.

Robert C. Barnard, Douglas E. Kliever, and Charles F. Lettow, Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., John L. Walker, Jr., Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for plaintiffs.

Bruce J. Chasan, Dept. of Justice, Washington, D. C., Leigh B. Hanes, Jr., U. S. Atty. for the Western District of Virginia, Roanoke, Pa., for defendants.

## OPINION AND ORDER

TURK, Chief Judge.

This suit is brought by eight chemical manufacturers seeking declaratory and injunctive relief against the Administrator and Deputy Administrator of the Environmental Protection Agency (EPA). The case is presently before the court pursuant to plaintiffs' motion for partial summary judgment and declaratory judgment and the defendants' motion to dismiss for lack of subject matter jurisdiction or alternatively to stay the proceedings.

Plaintiffs ultimately seek to have this court enjoin and set aside certain regulations promulgated by the Administrator of the EPA governing the effluent discharge of sulfuric acid plants on grounds that they are arbitrary, capricious, not supported by substantial evidence, beyond the statutory authority of EPA and not in accord with procedures of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 et seq. ("The Act") and the Administrative Procedure Act. Resolution of these allegations requires factual determinations and they are accordingly not now ripe for disposition. However, plaintiffs also raise several issues of statutory construction not dependent upon factual determinations and which may result in the disposition of the case

at this time. The following issues are now before the court for resolution:

1. Whether the Administrator of the EPA has the authority under section 301(b) of the Act to issue regulations establishing effluent limitations for sulfuric acid plants;

2. Whether the regulations in question conform to section 304(b) of the Act and the notice and public participation provisions of the Administrative Procedure Act; and

3. Whether this court has jurisdiction to review the regulations in question and the procedures by which they were promulgated, or whether as defendants contend, this suit should be dismissed for lack of subject matter jurisdiction.

## THE STATUTE

The Federal Water Pollution Control Act Amendments of 1972, while technically amending the Federal Water Pollution Control Act of 1965, 33 U.S.C. § 1151 et seq., is in effect a comprehensive statute in its own right. Section 101(a) of the Act states as its objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," and states as two of its goals "that the discharge of pollutants into the Navigable waters be eliminated by 1985" and "that wherever attainable, an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water be achieved by July 1, 1983." Of primary interest to this suit are sections 301, 304 and 402, which establish the regulatory framework for achieving the above goals and section 509(b)(1) providing for judicial review of the Administrator's actions.

Section 301(a) makes it unlawful for any person to discharge any pollutant except as in compliance with certain enumerated sections of the Act including section 301. Section 301(b) then states:

"In order to carry out the objective of this Act, there shall be achieved—

"(1)(A) not later than July 1, 1977, effluent limitations for point sources . . . (i) which shall require the application of the best practicable control technology currently available as defined by the Administrator pursuant to section 304(b) of this Act. . . .

"(2)(A) not later than July 1, 1983, effluent limitations for categories and classes of point sources . . . which (i) shall require application of the best available technology economically achievable for such category or class, which will result in reasonable further progress toward the national goal of eliminating the discharge of all pollutants, as determined in accordance with regulations issued by the Administrator pursuant to section 304(b)(2) of this Act, which such effluent limitations shall require the elimination of discharges of all pollutants if the Administrator finds, on the basis of information available to him (including information developed pursuant to section 315), that such elimination is technologically and economically achievable for a category or class of point sources as determined in accordance with regulations issued by the Administrator pursuant to section 304(b)(2) of this Act. . . ."

Section 304(b) to which section 301(b) refers provides:

"For the purpose of adopting or revising effluent limitations under this Act the Administrator shall, after consultation with appropriate Federal and State agencies and other interested persons, publish within one year of [enactment of this title], regulations, providing guidelines for effluent limitations, and at least annually thereafter, revise, if appropriate, such regulations. Such regulations shall—

"(1)(A) identify, in terms of amounts of constituents and chemical, physical, and biological characteristics

of pollutants, the degree of effluent reduction attainable through the application of the best practicable control technology currently available for classes and categories of point sources . . . ; and

"(B) specify factors to be taken into account in determining the control measures and practices to be applicable to point sources . . . within such categories or classes. Factors relating to the assessment of best practicable control technology currently available to comply with subsection (b)(1) of section 301 of this Act shall include consideration of the total cost of application of technology in relation to the effluent reduction benefits to be achieved from such application, and shall also take into account the age of equipment and facilities involved, the process employed, the engineering aspects of the application of various types of control techniques, process changes, non-water quality environmental impact (including energy requirements), and such other factors as the Administrator deems appropriate;

"(2)(A) identify, in terms of amounts of constitutents and chemical, physical, and biological characteristics of pollutants, the degree of effluent reduction attainable through the application of the best control measures and practices achievable including treatment techniques, process and procedure innovations, operating methods, and other alternatives for classes and categories of point sources . . .; and

"(B) specify factors to be taken into account in determining the best measures and practices available to comply with subsection (b)(2) of section 301 of this Act to be applicable to any point source . . . within such categories or classes. Factors relating to the assessment of best available technology shall take into account the age of equipment and facilities involved, the process employed,

the engineering aspects of the application of various types of control techniques, process changes, the cost of achieving such effluent reduction, non-water quality environmental impact (including energy requirements), and such other factors as the Administrator deems appropriate; and

"(3) identify control measures and practices available to eliminate the discharge of pollutants from categories and classes of point sources, taking into account the cost of achieving such elimination of the discharge of pollutants."

The statutory scheme further provides for a national system of discharge permits known as the "National Pollutant Discharge Elimination System" (NPDES) to insure that the control levels established by the Act are achieved. Thus, section 402(a)(1) states:

"Except as provided in sections 318 and 404 of this Act, the Administrator may, after opportunity for a public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section 301(a), upon condition that such discharge will meet either all applicable requirements under sections 301, 302, 306, 307, 308 and 403 of this Act, or prior to the taking of necessary implementing actions relating to all such requirements, such conditions as the Administrator determines are necessary to carry out the provisions of the Act."

Section 402(b–e) further provides that the permit issuing authority be given to the individual states which submit a program which meets the requirements of the Act, although the Administrator retains the power to prevent the issuance of a permit he deems to be "outside the guidelines and requirements of this Act." § 402(d)(2).

Section 509(b) provides for judicial review of the Administrator's determinations:

"(1) Review of the Administrator's action (A) in promulgating any stand-

ard of performance under section 306, (B) in making any determination pursuant to section 306(b)(1)(C), (C) in promulgating any effluent standard, prohibition, or treatment standard under section 307, (D) in making any determination as to a State permit program submitted under section 402(b), (E) in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306, and (F) in issuing or denying any permit under section 402, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such ninetieth day.

"(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) of this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement."

## THE REGULATIONS

On August 6, 1973, the EPA published notice of proposed rulemaking "with respect to effluent limitations, guidelines, standards of performance and pretreatment standards for new sources." 38 Fed.Reg. 21202. On October 11, 1973, EPA published notice of proposed rulemaking for 40 C.F.R. Part 415, "Effluent Limitations Guidelines and Standards of Performance and Pretreatment for Inorganic Chemicals Manufacturing Point Source Category." 38 Fed.Reg. 28174 et seq. These proposed regulations subdivided the inorganic chemicals manufacturing category into twenty-two sub-categories, each representing a different chemical, including sulfuric acid. With respect to sulfuric acid, the pro-

posal discussed the three principal methods of manufacture—double absorption plants, single absorption plants and spent acid plants—and stated that the proposed regulations would not apply to spent acid plants. However, the proposed regulations for both single and double absorption plants established the standard of "no discharge of process waste water pollutants to navigable waters" both "after application of the best practicable control technology currently available" and "after application of the best available technology economically achievable." 38 Fed.Reg. 28192. After receiving additional comments, including comments from seven of the plaintiffs to this suit, 39 Fed.Reg. 9612, final regulations were issued on March 12, 1974 for 40 C.F.R. Part 415 (Inorganic Chemicals Manufacturing Point Source Category). The Administrator declined to change the basic proposed regulations for sulfuric acid production, and the "no discharge of process waste water pollutants" went into effect. 40 C.F.R. §§ 415.212, 415.213, 39 Fed.Reg. 9634. The proposed regulations for sulfuric acid production (as well as other subcategories in the Inorganic Chemicals Manufacturing Group) were modified with regard to the limitations representing best practicable control technology currently available (40 C.F.R. § 415.212), by providing that the "no discharge" standard might be adjusted for certain plants by the Regional Administrator or the State in issuing an NPDES permit; according to the regulation, such an adjustment could be made on the basis of a showing that certain factors peculiar to the discharger are "fundamentally different" than the factors considered in formulating the regulation. 40 C.F.R. § 415.212, 39 Fed.Reg. 9634.

### I

Plaintiffs' statutory construction argument is essentially that the regulations for sulfuric acid plants are not valid effluent "guidelines" complying with the requirements of section 304(b). They contend that the word "guidelines"

in section 304(b) is a term of art which contemplates the administrative promulgation of broadly outlined regulations to serve as a starting point for the development of specific restrictions which would then be individualized for each discharger by way of permits issued by the Regional Administrator or State pursuant to § 402 with such permits embodying the "limitations" to be "achieved" pursuant to § 301. In support of this construction plaintiffs note that § 304(b) requires that the guidelines to be published as regulations contain two elements: (1) the degree of effluent reduction "attainable" by 1977 using the "best practicable control technology currently available" and by 1983 using the "best available control measures and practices achievable" for classes and categories of point sources; and (2) a specification of the factors to be taken into account in determining the control measures applicable to point sources within such categories or classes in order to attain these goals. Thus plaintiffs argue that the regulations were intended to be flexible guidelines and not prescriptive rules applicable across the board to all plants in a given category (i. e. sulfuric acid plants); and the permit granting agency would look to the guidelines for determining the degree of effluent limitation attainable for a given plant.

Plaintiffs specifically contend that the regulations for sulfuric acid plants fail to discuss the statutory factors and hence provide no guidance to the permit-granting authorities. Furthermore, they contend that the EPA's construction and implementation of the Act would frustrate the intent of Congress in allowing the States to play a major role in implementing the Act. They argue that by making the regulations binding prescriptions in the form of specific limitations instead of a "range" of discharge levels together with factors to

be taken into account for discrete industrial categories, the EPA has deprived the States of discretion in administering the NPDES program. This is said to be contrary to the intent of Congress expressed in § 101(b) of the Act "to recognize, preserve, and protect the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution. . . ."

Based on their construction of the Act, plaintiffs then contend that review in the Court of Appeals pursuant to § 509(b)(1) of the Act is not available to challenge the regulations constituting effluent guidelines under § 304(b). Since § 509(b) provides only for review of EPA actions under sections 301, 302, 306, 307 and 402 of the Act, review of other regulatory actions by the EPA as well as certain other agencies empowered to act under the Act would proceed under the Administrative Procedure Act, 5 U.S.C. § 702, and through other jurisdictional statutes such as the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361.[1] Thus plaintiffs argue that review of § 304(b) guidelines is not encompassed by § 509(b). In support of this position, plaintiffs point out that each of the sections specified in § 509(b) allow regulatory actions by the EPA which may then be enforced by the Administrator pursuant to § 309 or by "any citizen" pursuant to § 505 by way of a civil suit in the district court. They argue that actions taken pursuant to sections not specified in § 509(b), including guidelines issued pursuant to § 304(b), require further implementing steps, and hence a decision of broad precedential effect by a Court of Appeals was not deemed necessary in the first instance.

In contrast, defendants contend that the Act contemplates that the Administrator promulgate actual effluent limitations which will then be uniformly applied by the Administrator or the states

---

1. As a basis for jurisdiction to review what they consider to be section 304(b) "guidelines" plaintiffs also cite 28 U.S.C. §§ 1331, 1332, 1337 and 1651; the Declaratory Judg-

ment Act, 28 U.S.C. §§ 2201–2202; and the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

in issuing NPDES permits under section 402. According to their construction, section 304(b) guidelines have no direct relationship to permit proceedings under section 402, but merely provide a basis for establishing the effluent limitations. They accordingly argue that the regulations are effluent limitations properly established pursuant to section 301(b).

Defendants view the regulations in question, 45 C.F.R. §§ 415.212, 415.213, as valid effluent limitations promulgated pursuant to section 301(b) with the fixed number of zero for the discharge of process waste water from sulfuric acid plants being the established limitation. In addition they contend that 45 C.F.R. Part 415 establish the "guidelines" required by section 304(b) by subdividing the inorganic chemical manufacturing group into 22 subcategories of specific chemicals.[2] Thus defendants contend that the regulations are "guidelines" issued pursuant to section 304(b) by way of subcategorization, but are effluent limitations in terms of the specific numerical restrictions imposed.

On the basis of this construction, defendants argue that jurisdiction to review the regulations is exclusively in the Court of Appeals pursuant to section 509(b)(1)(E). Furthermore, it is asserted that since the "guidelines" are intertwined with and provide a definitional basis for the limitations, they should also be reviewed in the Court of Appeals.

## II

The issue of statutory construction presented in this case is one of first impression[3] in which the court must seek the intent of Congress from the words and structure of the statute and its legislative history. Although the varying interpretations of the Act presented by the parties both find support in the statute and its history, for the reasons which follow the court concludes: (1) that the Administrator was authorized to promulgate by regulation the effluent limitations in issue; (2) that the structural and content requirements of such regulations under section 304(b) were satisfied; and (3) that judicial review of these limitations and guidelines is exclusively in the Court of Appeals under section 509(b)(1)(E).

### 1.

Taken as a whole, the various sections of the Act support the defendants' construction that section 301(b) effluent limitations were intended to be promulgated as regulations apart from section 402 permit proceedings. This is implicitly supported by section 509(b)(1)(E) which provides for review of the Administrator's actions "in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306. . . ." The independence of such limitations is also implicit in section 505 which provides in subsection (a) for any citizen to sue for

2. The Administrator's approach was explained in the regulations as follows:
   The approach taken in developing effluent limitations guidelines and standards of performance for the inorganic chemicals manufacturing industry was to examine all variables and segment the industry into workable subcategories consistent with these variations. Twenty-two subcategories have been established based on the chemical product manufactured. In cases where two dissimilar processes are used to manufacture the same product separate limitations have been established within the subcategory. Thus, ranges are provided for, as are other factors, by segmenting the inorganic chemicals manufacturing point source category into discrete subcategories, each with its own limitation. 39 Fed.Reg. 9612 (March 12, 1973).

3. Plaintiffs cite Natural Resources Defense Council v. Train, 6 E.R.C. 1033 (D.D.C. 1973) in support of their construction of the Act. That case involved a suit to compel the Administrator to publish effluent limitation guidelines after expiration of the time period established by the Act. However, that case did not consider the issue of statutory construction now presented.

a violation of "an effluent standard or limitation under this Act"; but even more revealing is section 505(f) which defines "effluent standard or limitation under this Act" to include six separate definitions among which are: "(1) effective July 1, 1973, an unlawful act under subsection (a) of section 301 of this Act, (2) an effluent limitation or other limitation under section 301 or 302 of this Act; . . ." or (6) "a permit or condition thereof issued under section 402 of this Act. . . ." Obviously under plaintiffs' construction of the Act the second definition quoted above would be redundant with the sixth. Plaintiffs have offered no explanation for this apparent inconsistency with their position.

Plaintiffs would avoid the implication of section 509(b)(1)(E) by construing the word "promulgating" in section 509(b)(1)(E) as applying only to section 302 and the word "approving" as having application to effluent limitations under sections 301 or 306. In support of this construction, plaintiffs point out that section 402(b) allows a state to develop a plan for issuing permits and thus displace the Administrator's authority to issue permits; and further that section 402(d) provides a check on the states by allowing the Administrator to veto a permit issued by the state:

"(d)(1) Each State shall transmit to the Administrator a copy of each permit application received by such State and provide notice to the Administrator of every action related to the consideration of such permit application,

including each permit proposed to be issued by such State.

"(2) No permit shall issue . . . (b) if the Administrator within ninety days of the date of transmittal of the proposed permit by the State objects in writing to the issuance of such permit as being outside the *guidelines and requirements of this Act.* (plaintiffs' emphasis).

From these sections, plaintiffs argue that the use of "approving" in section 509(b)(1)(E) was in reference to the Administrator's action in reviewing effluent limitations under section 301(b) or standards of performance under section 306[4] which would be set by the States in permits. They further contend that such approval was a necessary element inasmuch as such a federal connection to a state program was necessary in order to justify review in the federal courts. On the other hand, plaintiffs argue that section 302[5] provides for the promulgation of effluent limitations by the Administrator in certain defined situations without a provision for state implementation. This is said to explain the use of "promulgating" in section 509(b)(1)(E).

Such a construction of section 509(b)(1)(E) is unconvincing for several reasons. First, section 302 does not require that effluent limitations be "promulgated"; rather it states that "effluent limitations . . . shall be established." The court fails to see a distinction between the establishment of limitations under section 302 and the

---

4. Section 306(b) provides that the Administrator shall publish regulations "establishing Federal standards of performance for new sources" within a category of sources. Plaintiffs point out that section 509(b)(1)(A) specifically provides for review of these "standards of performance." Section 306(c) authorizes the states to develop a procedure for applying and enforcing standards of performance for new sources located within the state which may then be approved by the Administrator. Plaintiffs contend that the implementation of these standards of performance would occur in permit proceedings which would be subject to approval by the Adminis-

trator in a manner similar to section 301(b) effluent limitations.

5. Section 302(a) authorizes the Administrator to "establish" "water quality" related "effluent limitations" when he finds that "discharges of pollutants from a point source or group of point sources, with the application of effluent limitations required under section 301(b)(2) (the technology-based limitations to be achieved by 1983), would interfere with the attainment or maintenance of that water quality in a specific portion of the navigable waters which shall assure protection of public water supplies. . . . "

achievement of limitations under section 301(b) particularly in view of the language used in section 301(e):

"Effluent limitations, established pursuant to this section or section 302 of this Act shall be applied to all point sources of discharge of pollutants in accordance with the provisions of this Act."

Similarly section 302(c) provides:

"The establishment of effluent limitations under this section shall not operate to delay the application of any effluent limitation established under section 301 of this Act."

Second, plaintiffs' construction of the interrelationship between section 509(b)(1)(E) and section 402(d)(1) and (2) ignores the fact that sections 402(d)(3), 402(e) and 402(f) allow the Administrator to waive review of permits issued by the States, and thus in such situations, by plaintiffs' analysis, there would be no federal judicial review under section 509(b)(1). Finally, the reference to "guidelines and requirements of this Act" in section 402(d)(2) would appear to be section 304(h) guidelines [6] (as opposed to section 304(b) guidelines) in view of the references to "guidelines" in sections 402(b), 402(c)(1), and 402(c)(2) and 402(e) being specifically to section 304(h) guidelines.

Even more strongly suggestive of the conclusion that section 301(b) limitations were intended to be promulgated as regulations is the interrelationship between section 301(b) and 304(b). Thus the requirements of sections 304(b)(1)(A) and 304(b)(2)(A) that the Administrator publish regulations which identify the degree of effluent reduction attainable by 1977 and 1983 appears to contemplate the issuance of actual effluent limitations which are referred to in section 301(b)(1)(A) as being "defined by the Administrator pursuant to section 304(b) of this Act" and in section 301(b)(2)(A) as being "determined in accordance with regulations issued by the Administrator pursuant to section 304(b)(2) of this Act. . . ."

Both plaintiffs and defendants quote the definition of effluent limitation in section 502(11) in support of their respective interpretations of the Act:

"The term 'effluent limitation' means any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance."

Plaintiffs argue that since a state cannot issue regulations the definition indicates that effluent limitations do not involve regulations and that the definition contemplates that both the states and the EPA will have a shared role in establishing effluent limitations. However, the court does not perceive this definition as being inconsistent with the defendants' construction of the Act and the regulations herein challenged since the effluent limitations promulgated by the Administrator may nevertheless be "established" for a given discharger through a permit issued by a state which has satisfied the requirements of section 402.

Further support for the conclusion that NPDES permits issued pursuant to section 402 would embody the effluent limitations previously established by the Administrator is implicit in the fact that section 402(a) requires that such permits meet the "applicable requirements under section 301" but omits any reference to section 304(b) guidelines.

As noted, the regulations herein challenged establish the number of zero as the effluent limitation for both single and double absorption plants. The court is of the opinion from a consideration of the structure and wording of the Act

---

6. These pertain to the procedural requirements of a state-operated permit program.

that the Administrator had the authority to promulgate such limitations under section 301(b) pursuant to his authority under section 304(b). It follows that plaintiffs' substantive challenge to such limitations must be brought in the Court of Appeals pursuant to section 509(b) (1)(E).

### 2.

Plaintiffs further challenge the regulations in question for failing to specify the factors to be taken into account in determining the control measures and practices to be applicable to point sources within such categories or classes, as required by section 304(b)(1)(B) and 304(b)(2)(B). As noted, defendants argue that the subcategorization in effect establishes "guidelines" under section 304(b). They contend that variations in plant age, size, manufacturing processes, raw materials, etc. (section 304(b)(1)(B) and 304(b)(2)(B) factors) were taken into account by such subcategorization. They further argue that this approach is consistent with the statutory scheme and facilitates the achievement of reasonably uniform limitations for similar point sources under section 301 of the Act.

The court notes that although the factors were not set forth as regulations as such, the regulations do indicate that the factors were considered. The regulations in question also indicate that the effluent limitations established could be varied for an individual discharger in an NPDES permit upon a showing "that factors relating to the equipment or facilities involved, the processes applied or other such factors related to such discharger are fundamentally different from the factors considered in the establishment of the guidelines. . . ." 39 Fed.Reg. 9634; 45 C.F.R. § 415.212. In addition, defendants assert (and the regulations note) that the factors in

question are analysed in a "Development Document."

In view of the aforementioned conclusion that sections 301(b) and 304(b) intend that the Administrator will publish effluent limitations for classes and categories of point sources, the court is of the opinion that the approach taken by the Administrator in specifying factors is in accord with section 304(b). In this regard it must be noted that the factors required to be specified under section 304(b) were not intended to exist in a vacuum. Rather, both sections 304(b)(1)(B) and 304(b)(2)(B) respectively require such factors in reference to "the assessment of best practicable control technology currently available to comply with subsection (b)(1) of section 301" and "the best measures and practices available to comply with subsection (b)(2) of section 301". Thus the statute appears to contemplate the incorporation of such factors in the effluent limitations established under section 301, which was apparently done in this case. Accordingly, the court believes that any challenge to the Administrator's consideration of various factors or the weight given to each, like the challenge to the actual numerical limitations, is in essence a challenge to the Administrator's action in promulgating effluent limitations under section 301 and must be pursued under section 509(b)(1)(E) in the Court of Appeals.

The court further is of the opinion that section 509(b) is consistent with the above construction of the Act. It is reasonable to assume that by providing original judicial review in the Courts of Appeals of effluent limitations under section 509(b) along with strict time limitations and prohibitions on review by way of criminal or other civil proceedings, Congress sought to establish expeditious and consistent application of limitations.[7] However, by plain-

---

7. There is very little legislative history relative to section 509(b). The bill as originally passed by the House provided for judicial

review in the district courts whereas the Senate bill provided for review of certain administrative actions in the Court of Ap-

tiffs' construction of the Act, actual effluent limitations would always be individualized for dischargers in NPDES permits, thus limiting the broad precedential effect of any judicial decision approving or rejecting any such limitation. Furthermore, if plaintiffs could challenge section 304(b) guidelines in the district court and section 301(b) limitations in the Court of Appeals, this would create duplicative litigation because of the close interrelationship between these sections and the fact that the administrative record in each suit would be virtually identical. In addition, any successful challenge to guidelines in the district court would affect the limitations which could only be challenged in the Courts of Appeals and would thus hinder the goal of prompt judicial review.

### 3.

The legislative history of the Act is generally consistent with the stated conclusions concerning the relationship between sections 301, 304 and 402 and the Administrator's authority to establish the effluent limitations in issue. Both the House Report accompanying H.R. 11896 and the Senate Report accompanying S. 2770 indicate that the Administrator is to establish specific effluent limitations for subcategories of point sources. Thus the House Report stated:

As required in section 304(b)(1) (A), *the administrator, by regulations, is to identify the degree of effluent reduction attainable by the application of the best practicable control technology currently available for classes and categories of point sources.* By this the Committee expects that the Administrator will concentrate on, but not be limited to, those categories of point sources enumerated in section 306(b)(1)(A) and any which the Administrator might add to that list. *The Committee ex-*

*pects that the identification will be in objective terms and will set out actual performance levels for the classes and categories of point sources rather than prescribing specific control techniques, processes or equipment."* H. Rep. No. 92–911, 92d Cong., 2d Sess., 107 (1972), reprinted in Senate Committee on Public Works, Committee Print, A Legislative History of the Water Pollution Control Act Amendments of 1972, 93d Cong. 1st Sess., at 794 (1973) (hereinafter "Legislative History"). (emphasis added).

The Senate Report similarly indicates that effluent limitations will be established by regulations, and in addition indicates that the defendants' approach in incorporating factors into such limitations is consistent with the statutory scheme.

"It is the Committee's intention that pursuant to subsection 301(b) (1)(A), and Section 304(b) the Administrator will interpret the term 'best practicable' when applied to various categories of industries as a basis for specifying *clear and precise effluent limitations* to be implemented by January 1, 1976. *In defining best practicable for any given industrial category, the Committee expects the Administrator to take a number of factors into account.* These factors should include the age of the plants, their size and unit processes involved and the cost of applying such controls. In effect, for any industrial category, the Committee expects the Administrator to define a range of discharge levels, above a certain base level applicable to all plants within that category. In applying effluent limitations to any individual plant, the factors cited above should be applied to that specific plant. In no case, however, should any plant, be allowed to discharge more pollutants per unit of production than is defined by that

peals for the District of Columbia and others in the Courts of Appeal for the appropriate circuit. H.R. 11896, 92d Cong., 2d

Sess. § 509(b) (1972); S. 2770, 92d Cong., 1st Sess. § 509(b).

base level." S.Rep. No. 92–414, 92 Cong., 1st Sess. p. 50, U.S.Code Cong. & Admin.News 1972, p. 3716; Legislative History at 1468. (emphasis added).

Plaintiffs argue that the reference to the Administrator establishing a "range of discharge levels" supports their construction of the Act. However, by creating narrow subcategories of point sources subject to different limitations, the Administrator has in effect created a range of discharge levels for various categories of point sources—in this case the category being inorganic chemicals manufacturing. In any case, the determination herein challenged set the limitation of "no discharge of process waste water" for two types of sulfuric acid plants, indicating that in the Administrator's opinion a range of numbers was inappropriate. Whether the substance of this decision was correct is, as noted above, to be challenged under section 509(b)(1)(E) in the Court of Appeals.

In the Conference Report on S. 2770 the following was stated with respect to section 304(b):

"In determining the 'best available technology' for a particular category or class of point sources, the Administrator is directed to consider the cost of achieving effluent reduction. *The Conferees intend that the factors described in section 304(b) be considered only within classes or categories of point sources and that such factors not be considered at the time of application of an effluent limitation to an individual point source within such a category or class.*

"Except as provided for in section 301(c) of the Act, the intent is that effluent limitations applicable to individual point sources within a given category or class be as uniform as possible. The Administrator is expected to be precise in his guidelines so as to assure that similar point sources with similar characteristics, regardless of their location or the nature of the water into which the dis-

charge is made, will meet similar effluent limitations.

"The Conferees have provided, however, a mechanism for individual point source-by-source consideration in section 301(c). That section provides that the Administrator may modify any effluent limitation based on 'best available technology' to be achieved by July 1, 1983, with respect to any point source, upon a showing by the owner or operator of such point source that an effluent limitation so modified will represent the maximum use of technology within the economic capability of the operator and will result in reasonable further progress toward the goal of the elimination of the discharge of pollutants." 118 Cong.Rec. S. 16874 (daily ed., Oct. 4, 1972; Legislative History at 172. (emphasis added).

This quotation appears to be basically consistent with defendants' interpretation of the Act. Specifically it supports the defendants' construction that section 304(b) factors may be utilized to create subcategories subject to uniform, specific effluent limitations and refutes plaintiffs' contention that such factors are to have an independent status for the purpose of establishing discharge levels for individual plants.

4.

Plaintiffs have raised a final contention concerning the promulgation of the regulations in question which is a concomitant to their other allegations based on their construction of the statute. They argue that in issuing the regulations for inorganic chemicals, the Administrator failed to adhere to the notice and opportunity-to-comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553. There is apparently no dispute that notice of proposed rulemaking was published in the Federal Register on August 6, 1973 (38 Fed.Reg. 21202) and October 11, 1973 (38 Fed.Reg. 28174) and extensive com-

ments were received from the public, including the plaintiffs. The final regulations issued on March 12, 1974 summarized the major comments received since the October 11 notice of proposed rule-making.

The plaintiffs now contend however that they approached the proposed regulations on the assumption that such regulations would be flexible "guidelines" issued under section 304(b) and not actual effluent limitations to be mechanically applied to all plants in a given subcategory. Thus they argue that by promulgating actual effluent limitations, the Administrator rendered ineffective the notice and public participation requirements of the APA.

Although the record before the court tends to belie plaintiffs' allegations of surprise and prejudice, the court does not now decide this claim. Rather, the court is of the opinion that in view of its construction of the Act, supra, review of this procedural claim should also proceed in the Court of Appeals. Section 509(b)(1)(E) provides for jurisdiction in the Court of Appeals to review "the Administrator's action" in "promulgating any effluent limitation or other limitation under section 301." This jurisdictional section is unqualified, and the court perceives no reason why review of the adequacy of notice and public participation regarding regulations which establish effluent limitations, should not proceed in the same manner as a suit challenging the substantive action of the Administrator in setting particular limitations.

To summarize, the court concludes that the regulations herein challenged are effluent limitations established by the Administrator pursuant to section 301(b) and 304(b); and that review of both the substance of such limitations and the procedures utilized in establishing the same is exclusively in the Court of Appeals pursuant to section 509(b)(1)(E). Accordingly, for the reasons stated defendants' motion to dismiss this suit for lack of subject matter jurisdiction is hereby granted.