E. I. du PONT de NEMOURS AND COMPANY et al., Appellants,

v.

Russell E. TRAIN, as Administrator, Environmental Protection Agency, and John R. Quarles, as Deputy Administrator, Environmental Protection Agency, Appellees.

No. 74–2237.

United States Court of Appeals, Fourth Circuit.

Argued April 22, 1975.

Decided Dec. 30, 1975.

Certiorari Granted April 19, 1976. See 96 S.Ct. 1662.

Robert C. Barnard, Washington, D. C. (Douglas E. Kliever and Charles F. Lettow, Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., John L. Walker, Jr., Roanoke, Va., on brief), for appellants.

Kathryn A. Oberly, U. S. Atty. Dept. of Justice, Paul R. Thomson, Jr., Asst. U. S. Atty. (Wallace H. Johnson, Asst. Atty. Gen. Alan G. Kirk, II, Asst. Administrator for Enforcement and Gen. Counsel, Edmund B. Clark, Bruce J. Chasan, Attys., U. S. Dept. of Justice, Ray E. McDevitt, Atty., Environmental Protection Agency, on brief), for appellees.

Before RIVES * and BREITENSTEIN ** Senior Circuit Judges, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Western District of Virginia dismissing appellants' action for lack of subject matter jurisdiction. Suit was filed in the district court by the appellants, eight chemical manufacturers, who sought re-

---

* Senior Circuit Judge, U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

** Senior Circuit Judge, U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

view of certain regulations promulgated under the Federal Water Pollution Prevention and Control Act of 1972. 33 U.S.C. § 1251 et seq. (hereinafter the Act). These regulations, which purport to establish effluent limitations for inorganic chemicals, were issued by the Administrator of the Environmental Protection Agency (EPA), appellee herein, on March 12, 1974, and consist of:

(1) Standards of performance for new plants.

(2) Pretreatment standards for new plants discharging wastes into municipal treatment plants.

(3) Effluent limitations for existing plants.

39 Fed.Reg. 9612 et seq., 40 CFR 415.

The only question presented in this appeal is whether the district courts have jurisdiction to review effluent limitations regulations issued by the Administrator to control effluent discharges from existing plants. A necessary corollary is whether the courts of appeals have jurisdiction under § 509 of the Act, 33 U.S.C. § 1369(b)(1), to review, on direct petition for review, regulations for existing plants, for if we have the jurisdiction, the district courts do not.[1] We conclude for the reasons stated below that the courts of appeals do have jurisdiction to review directly the regulations in question, and, therefore, the judgment of the district court must be affirmed.

■ As the district court noted, the issue presented was largely one of first impression. Although the matter has now been considered directly or indirectly by some few courts, it is yet relatively new and we think it appropriate that we ascertain the intent of Congress in adopting the Act in its present form by looking to the language of the statute itself and its legislative history, as well as the decisions on the subject. The original Act dates from 1948, but did not assume its present form until 1972 when the then existing statutory language was extensively revised. The object of these revisions, as noted in the body of the statute itself, was and is the restoration and maintenance of the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251. This goal is to be accomplished primarily through the control of pollutants discharged into navigable waters. It should be kept in mind that the 1972 amendments changed the emphasis in the statutory scheme of water pollution control from that of regulating the quality standard of the body of water involved to regulating not only the quality standard of the body of water but also the quality of effluent discharged into the body of water. Compare the various statutes itemized in footnotes to 33 U.S.C.A. § 1251 et seq.; and see, e. g., Senate Report 92–214, dated October 28, 1971; House Report 92–911 dated March 11, 1972; U.S.Code Cong. & Admin. News, p. 3668; *CPC International v. Train,* 515 F.2d 1032, 1034–36 (8th Cir. 1975).

■ In the course of adopting the 1972 amendments, a great deal of atten-

---

1. Section 509 provides in relevant part:

    "(b)(1) Review of the Administrator's action . . . (E) in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306, and (F) in issuing or denying any permit under section 402, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person."

    No question is made here of any concurrent jurisdiction of the district courts and the courts of appeals, and we see nothing in the statute to indicate that Congress intended such concurrent jurisdiction. As noted in *Passenger Corp. v. Passenger Association,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974), "[a] frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." Cf. § 505(a) of the Act, 33 U.S.C. § 1365(a), which specifically confers jurisdiction on the district courts for certain actions under the statute. *NRDC v. Train,* 166 U.S.App.D.C. 312, 510 F.2d 692 (1974).

tion was focused on the proper function of the States in the regulation and control of overall water quality. This is reflected in Congress' concern, written into the statute, that the "primary responsibilities and rights of States to prevent, reduce, and eliminate pollution" be preserved. 33 U.S.C. § 1251(b). Although the United States in the last analysis regulates, in most cases, the amount of pollution discharged into the nation's waters, the States, through the permit granting plan (§ 402, 33 U.S.C. § 1342), are intended to take a large part in the administration and application of the statutory plan, including the application of regulations issued by the EPA as well as the application of the statute.[2] There is here no need to, and we do not, express an opinion as to the extent, construction, effect, or application of any regulation issued by EPA.

Central to the statutory framework within which the permit system is to operate are the regulations providing for or establishing effluent limitations. The EPA contends that the Act contemplates that the Administrator promulgate actual effluent limitations which will be uniformly applied in issuing permits under the Act.[3] According to its construction, Congress intended that the Administrator issue effluent limitations through regulations promulgated under § 301(b), 33 U.S.C. § 1311(b). That section provides:

"(b) In order to carry out the objective of this Act there shall be achieved—

(1)(A) not later than July 1, 1977, effluent limitations for point sources, other than publicly owned treatment works, (i) which shall require the application of the best practicable control technology currently available as defined by the Administrator pursuant to section 304(b) of this Act . . . .

. . . . .

**2.** For a good general discussion of the statute through the eyes of EPA's Assistant General Counsel, see Zener, *The Federal Law of Water Pollution Control*, Federal Environmental Law, 683 (West 1974).

**3.** Section 402, 33 U.S.C. § 1342, establishes the procedure for the issuance of permits under the Act. It states:

"(a)(1) Except as provided in sections 318 and 404 of this Act, the Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section 301(a), upon condition that such discharge will meet either all applicable requirements under section 301, 302, 306, 307, and 403 of this Act, or prior to the taking of necessary implementing actions relating to all such requirements, such conditions as the Administrator determines necessary to carry out the provisions of this Act.

"(2) The Administrator shall prescribe conditions for such permits to assure compliance with the requirements of paragraph (1) of this subsection, including conditions on data and information collection, reporting, and such other requirements as he deems appropriate.

. . . . .

"(b) At any time after the promulgation of the guidelines required by subsection (h)(2) of section 304 of this Act, the Governor of each State desiring to administer its own permit program for discharges into naviga-

ble waters within its jurisdiction may submit to the Administrator a full and complete description of the program it proposes to establish and administer under State law or under an interstate compact. In addition, such State shall submit a statement from the attorney general (or the attorney for those State water pollution control agencies which have independent legal counsel), that the laws of such State, or the interstate compact, as the case may be, provide adequate authority to carry out the described program. The Administrator shall approve each such program unless he determines that adequate authority does not exist

. . . . .

"(d)(1) Each State shall transmit to the Administrator a copy of each permit application received by such State and provide notice to the Administrator of every action related to the consideration of such permit application, including each permit proposed to be issued by such State.

"(2) No permit shall issue (A) if the Administrator within ninety days of the date of his notification under subsection (b)(5) of this section objects in writing to the issuance of such permit, or (B) if the Administrator within ninety days of the date of transmittal of the proposed permit by the State objects in writing to the issuance of such permit as being outside the guidelines and requirements of this Act."

(2)(A) not later than July 1, 1983, effluent limitations for categories and classes of point sources, other than publicly owned treatment works, which (i) shall require application of the best available technology economically achievable . . . as determined in accordance with regulations issued by the Administrator pursuant to section 304(b)(2) of this Act."

The Administrator asserts that he has combined his rulemaking authority under this section with that specifically provided for under § 304(b), 33 U.S.C. § 1314(b), to arrive at the comprehensive set of regulations which are here under review. Since § 509 of the Act states that actions of the Administrator under § 301 are directly reviewable by courts of appeals, the EPA asserts that the district court was correct in dismissing the complaint for lack of jurisdiction.

Appellants, on the other hand, while not challenging the right of this court to directly review any action of the Administrator under § 301, contend that he lacks authority to issue effluent limitation regulations under the provisions of that section. They argue that the language of § 301 requires only that effluent limitations be "achieved," not that they be independently established and achieved. Thus, according to their interpretation of the Act, § 301 merely sets forth the statutory objectives to be attained, and the means of actually reaching these objectives are set out in § 304 of the Act, 33 U.S.C. § 1314, which states in part:

"(a)(1) The Administrator . . . shall develop and publish . . . criteria for water quality . . . .

"(b) For the purpose of adopting or revising effluent limitations under this Act the Administrator shall . . . publish . . . regulations, providing guidelines for effluent limitations . . . . Such regulations shall—

"(B) specify factors to be taken into account in determining the best measures and practices available to comply with subsection (b)(2) of section 301 of this Act . . . ."

The challenged regulations must, therefore, according to appellants, be deemed to have been issued under § 304(b) and neither under § 301 nor a combination of § 301 and § 304(b) as the EPA asserts. Based upon this interpretation of the statutory provisions in issue, appellants contend that review in the courts of appeals pursuant to § 509(b)(1) is not available and that the action was properly brought before the court below in accordance with the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. As a corollary to this construction, appellants seek a ruling that the effluent limitations for existing point sources issued by EPA are invalid because they say the Administrator had no authority to issue them under § 301, and could only have issued them under § 304(b).

The case of *CPC International, Inc. v. Train*, 515 F.2d 1032 (8th Cir. 1975), appears to agree with appellants' interpretation of the statutory provisions involved. In that case, the court stressed the fact that § 301 provides the Administrator with no separate power to promulgate effluent limitations for existing point sources. The court noted,

"[o]ther sections of the Act demonstrate that the omission of such a provision [providing for the issuance of regulations under § 301] was not an oversight, for Congress provided unambiguously for the promulgation of national standards in other sections of the Act. Nationally promulgated standards were expressly mandated for new sources in § 306(b)(1)(B) . . . ." 515 F.2d at 1038.

Thus, the court concluded that jurisdiction to review such actions of the EPA, which were deemed to have been taken in accordance with § 304(b), did not lie in the courts of appeals because the EPA could not promulgate effluent limitations for existing sources by regulations under § 301.

The court below, on the other hand, ruled that the effluent limitations standards at issue were promulgated pursu-

ant to § 301 "apart from section 402 permit proceedings," and, as a result, it lacked jurisdiction to review. The court pointed first to § 509(b)(1)(E), which refers to judicial review of the Administrator's actions "in approving or promulgating any effluent limitation[s] or other limitation[s] under sections 301, 302, or 306" as supportive of the proposition that effluent limitations could be issued under § 301. In addition, the court noted that § 402(a) requires that permits issued thereunder meet the applicable requirements under § 301, and we note that under § 509(b) review of the action of EPA in issuing a permit is in the courts of appeals. The district court also noted it was of opinion the Administrator had authority under § 301(b) to promulgate the regulations pursuant to his authority under § 304(b) and concluded that challenges to the effluent limitations must be handled in the courts of appeals.

This or related questions have also been considered by several other courts faced with challenges to EPA regulations under this statute. The Third Circuit, in *American Iron and Steel Institute v. EPA*, 526 F.2d 1027 (3d Cir. 1975), disagreed with the reasoning of the Eighth Circuit in *CPC* and concluded that the Administrator was authorized to issue single number effluent limitations under § 301. The jurisdictional question was apparently not raised there. That court considered such effluent limitations as a uniform ceiling, the maximum amount of pollutant in effluent discharge which is permissible. And it also gave effect to § 304 by requiring compliance with it by EPA in preparing meaningful guidelines and addressing statutory factors for application to industry. Since it found § 304 was not complied with by EPA, the court set aside the issued effluent limitations because the limitations might have been less stringent if the statute (§ 304) had been followed in issuing the guidelines and consideration of statutory and individual factors.

In *American Meat Institute v. Environmental Protection Agency*, 526 F.2d 442, No. 74–1394 (7th Cir. 1975), the jurisdictional problem was also considered. The court held it had jurisdiction for it considered the effluent limitations were issued under § 301 of the Act. The court stated "the most natural reading of the language of the Act is that § 301 is a source of authority to promulgate effluent limitations, independent of the § 402 permit procedure." This part of the holding is then quite similar to that of the district court in our case. The Seventh Circuit also depended on *Train v. National Resources Defense Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); gave weight to the EPA's construction of the statute; and found it was "sufficiently reasonable to preclude . . . [the court] from substituting its judgment for that of the Agency." We express no opinion as to the validity of this latter proposition in the context of a court determining its own jurisdiction which, of course, is conferred by Congress, *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943), and we need not in order to arrive at our conclusion.

In *American Petroleum Institute v. Train*, 7 ERC 1795 (D.Colo.1974), the court concluded it lacked jurisdiction since the challenged regulations were issued under § 301 as well as § 304, and review should be had in the courts of appeals "even should the Administrator have interpreted his authority under [§ 301] incorrectly." Finally, the court, in *American Paper Institute v. Train*, 381 F.Supp. 553 (D.D.C.1974), likewise found it lacked jurisdiction to review the challenged regulations even if they were guidelines under § 304 for in that event they would be "only an aid in establishing effluent limitations and since limitations, not guidelines, comprise the standards of performance for the issuance of permits, plaintiff [could not] be heard to complain that it [was] '*adversely affected or aggrieved*' by guidelines, the criteria of Section 10(a) of the APA."

Thus, the parties to this dispute point to authority in support of their respective positions. We are of opinion, however, that the central question addressed by both the Eighth Circuit and the district court below, as well as some of the other cases, regarding the EPA's authority under § 301 should not necessarily be dispositive of the jurisdictional issue. Both courts have decided the substantive question of authority to issue the regulations under § 301 in order to reach the question of jurisdiction. With all deference to both courts, we think it unnecessary to decide the substantive question of authority to issue the regulations under § 301 alone in order to decide the question of which federal court has jurisdiction to review them.

We are impressed, as was the court below, by the express language of § 509(b)(1)(E) which refers to "review of the Administrator's action . . . in approving or promulgating any effluent limitation or other limitation under section 301, 302, or 306." It is significant to note that section 306 provides for the issuance of regulations "establishing Federal standards of performance for *new* sources [of pollutants]." 33 U.S.C. § 1316 (emphasis added). Section 301, by way of contrast, is concerned with existing sources.[4] Were we to accept appellants' interpretation of the Act, review of regulations governing existing sources would lie in the district courts under the Administrative Procedure Act, while review of new source standards would be before the courts of appeals under § 509.[5] We do not conclude that Congress intended for review to be bifurcated in this manner.

While there is little legislative history relating to § 509, it is highly significant that the committee reports make no mention of any division of judicial review. It is clear that the House and Senate conferees disagreed over whether there should be judicial review in the district courts or the courts of appeals. Yet, there is no indication of any compromise agreement providing for divided review of the EPA standards. To the contrary, the Senate appears to have prevailed on this point. Leg. History (Conference Report), p. 330. A literal reading of the Conference Report without reference to the statute supports the position we take here.

In the House Report discussing judicial review, it was noted that "with the number and complexity of administrative determinations that the legislation requires there is a need to establish a clear and orderly process for judicial review." Although the House Bill originally provided for review in the district courts, this report indicates that Congress did not intend for the actions of the Administrator to be subjected to the complexities inherent in a system of review divided between different courts. Rather, it appears to have been its desire that administrative actions be reviewable, but in a manner not likely to impede

4. The terms "source" and "new source" are defined in the Act as follows:

"(2) The term 'new source' means any source, the construction of which is commenced after the publication of proposed regulations prescribing a standard of performance under this section which will be applicable to such source, if such standard is thereafter promulgated in accordance with this section.

"(3) The term 'source' means any building, structure, facility, or installation from which there is or may be the discharge of pollutants." 33 U.S.C. § 1316(a) (Supp.1975).

5. The practical difficulties occasioned by such a review procedure are illustrated by means of an example. Assume that an existing plant licensed under the Act expands. It is possible that the expanded portion of the plant would constitute a new point source within the meaning of § 306. In that event, the plant could be compelled to maintain two actions simultaneously, one in the district court and another in the court of appeals, in order to challenge the action of the Administrator. The jurisdictional overlap would only add to the complexities already inherent in the statute.

Recognizing the classical prohibition on residents of glass houses who throw rocks, with the Third Circuit we are yet constrained to say the Act is not clear. A simple declaratory sentence, or even a phrase, or a word, could have solved this knotty question, which relates to a substantial part of the industry in the country.

enforcement unduly. Leg. History (House Report), p. 823.

The EPA contends that, this being the intent of Congress, § 301 must be viewed as authorizing the promulgation of effluent limitation regulations. Otherwise, they argue, § 509's reference to § 301 would be meaningless. We are not persuaded that this conclusion must necessarily follow in order for this court to find jurisdiction under § 509.

Even if § 301 merely sets out the technological objectives to be attained under the Act, courts of appeals may properly assume jurisdiction to review actions of the Administrator in issuing regulations to achieve these objectives. If § 301 is to be viewed in the manner advocated by the appellants, then § 304(b) must necessarily be deemed the key to the attainment of the objectives set forth in § 301. Thus, to obey the mandate of § 301, "guidelines for effluent limitations" must be promulgated under § 304(b). Construed in this light, any action taken by the Administrator under § 304(b) should properly be considered to be pursuant to the provisions of § 301 and, therefore, reviewable by this court under § 509.

By enacting § 509(b), Congress established a statutory plan to be followed to obtain judicial review of agency actions under the Act. Only those courts upon which Congress has bestowed authority have jurisdiction. See *Whitney Bank v. New Orleans Bank*, 379 U.S. 411, 420, 422, 85 S.Ct. 551, 13 L.Ed.2d 386.

The district court correctly held it had no jurisdiction. None is conferred upon it by the statute involved. In federal courts, "[j]urisdiction is essentially the power conferred by Congress to decide a given type of case one way or the other." *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577. In its exercise of its statutory jurisdiction, this court determines whether the Administrator acted within his statutory authority.

Since we are of opinion that Congress has conferred on the courts of appeals the power to decide the merits of this case one way or the other, and not conferred such power on the district courts, we think the judgment of the district court should be affirmed.

Accordingly, the district court was without jurisdiction, and its judgment, if not its entire opinion, is

*Affirmed.*